AMALGAMATED HOUSING CORPORATION, Plaintiff, *v.* MARGARET KELLY et al., Defendants.

Supreme Court, Special Term, Bronx County, February 18, 1948.

*Milton Altman* for plaintiff.

*Murray Monness* for Margaret Kelly, defendant.

*Daniel F. Kelley* for William Kelly and others, defendants.

*Nathan Silverman* for committee of Thomas Kelly, defendant.

*Nathaniel L. Goldstein, Attorney-General (Abe Wagman* of counsel), for the People of the State of New York, defendant.

BENVENGA, J. This is a proceeding by plaintiff, a limited dividend housing company, to condemn a parcel of real property for low-rent housing for persons of low income. The principal question presented relates to the constitutionality and construction of a provision in the Public Housing Law, pursuant to which this proceeding is brought.

(1) Defendants, opposing condemnation, challenge the constitutionality of the provision, in section 135 of the Public Housing Law, which declares that, in any proceeding to acquire property, the certificate issued by the State Housing Commissioner shall be " conclusive evidence " as to the matters lawfully certified therein (Public Housing Law, § 135); that is, " that the acquisition of the property is necessary for the construction of a [low-rent housing] project and that the acquisition is in the public interest and necessary for the public use." (Public Housing Law, § 134.) Specifically, defendants contend that the provision which makes the certificate " conclusive evidence " of the fact that the acquisition of the property is necessary for the public use is in violation of the due process of law clause of both the State Constitution (art. I, § 6) and the Fourteenth Amendment to the Federal Constitution, in that it operates to deny them the right to review the determination of the State Housing Commissioner.

I shall assume, for the purpose of this decision, that the Legislature cannot pass conclusive rules of evidence (see 16 C. J. S., Constitutional Law, § 621, p. 1264); that a legislative or administrative finding of public use, though entitled to great weight, is not conclusive on the courts (*Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333, 339; *Matter*

*of Murray* v. *LaGuardia,* 291 N. Y. 320, 329, certiorari denied 321 U. S. 771; *United States ex rel. Tenn. Valley Authority* v. *Welch,* 327 U. S. 546, 552, 556–557); and that, if the Legislature, by the enactment of the challenged provision, intended to deny to property owners the right to review a determination of the State Housing Commissioner, it is unconstitutional and void. Such a construction, it suffices to say, is unwarranted.

It is true that the term " conclusive evidence ", in its primary meaning, has been defined as that which is incontrovertible, or that from which only one reasonable conclusion can be drawn, taking all of the facts and circumstances into consideration; but it has also been held to be synonymous with the words manifest, plain, clear, obvious, visible, apparent, indubitable, palpable and notorious (*Covington County* v. *Fite,* 120 Miss. 421; *Jackson County* v. *Meaut,* 181 Miss. 282). So, " conclusive evidence ", which has been said to be synonymous with " conclusive proof ", has been defined as " proof * * * that is convincing in character " (*Di Mieri* v. *Metafield, Inc.,* 126 N. J. L. 484, 487, affd. 127 N. J. L. 597; *Matter of Frihauf,* 58 Wyo. 479, 497), and as equivalent to proof " to a moral certainty " or " beyond a reasonable doubt ", and so to require a higher degree of proof than proof " by preponderance of the evidence " (*Covington County* v. *Fite, supra,* p. 427). In short, the term " conclusive evidence " contemplates degree of proof and its meaning in a particular statute depends largely upon its context and the intention of the Legislature (*Di Mieri* v. *Metafield, Inc., supra,* pp. 487–488; *Covington County* v. *Fite, supra;* 15 C. J. S., p. 802).

In determining the meaning in which " conclusive evidence " is used in section 135, it is to be noted that the certificate is a condition precedent to the condemnation of the property set forth therein; that the certificate may be issued only after a public hearing (Public Housing Law, § 134), notice of which must be published in the manner prescribed by law (§ 135). The certificate, moreover, must state the nature of the interest to be acquired, and shall declare, if that be the finding of the State Housing Commissioner, that the acquisition of the property is in the public interest and necessary for the public use (§ 134). It is the certificate so issued which is made " conclusive evidence " of the matters lawfully certified therein " in any proceeding to acquire property " (§ 135). In other words, section 135 contemplates the use of the certificate in a proceeding to condemn property, as is sought to be done in the case at bar, and prescribes the weight and sufficiency of the certificate when offered as proof of the facts lawfully certified therein.

Moreover, the meaning of " conclusive evidence " as used in section 135 should be determined in the light of the circumstance that the presumption is in favor of the constitutionality of the provision, and that it should be so construed as to uphold its validity, either in whole or in part. Consequently, if the provision is reasonably susceptible of two constructions, one of which would render it unconstitutional, and the other valid, that construction should be adopted which will render it valid or avoid grave and doubtful questions of its constitutionality (*Matthews* v. *Matthews,* 240 N. Y. 28, 35–36). " If there is any doubt as to the meaning of the statute, it should be given such construction as will, if possible, make it conform to the requirements of the Constitution." (*People* v. *Ryan,* 230 App. Div. 252, 255.)

Applying these principles of statutory construction, it would seem that it was the intention of the Legislature to give the certificate great weight, and even to regard the matters therein lawfully certified as incontrovertible and conclusive in character, provided the certificate was issued in the manner prescribed by law, and provided there is any basis for the determination of the State Housing Commissioner, and to nullify the determination only if " ' palpably without reasonable foundation ' " (see *Matter of Murray* v. *LaGuardia, supra,* p. 329). That, I may add, is the construction I have given the provision in question and the weight and effect of the certificate.

(2) Defendants also contend that the taking, under the circumstances in this case, is essentially private and not public, and, therefore, forbidden by the State Constitution (art. I, § 6; *Matter of Hopper* v. *Britt,* 203 N. Y. 144, 149–150). In support of that contention, defendants refer to the evidence that the project is sponsored by the Amalgamated Clothing Workers of America, and that about 30% of the present tenant-stockholders of the plaintiff corporation are members of that union or in some way connected with the garment trade.

It is a fair inference that, in selecting its tenant-stockholders, preference seems to have been given to members of the Amalgamated Clothing Workers of America or persons connected with the garment trade. But that circumstance does not, in my opinion, justify the holding that the proposed taking is not for a public use, as that expression is used in the Public Housing Law. The purpose of that law is to protect and safeguard the entire public from the menace of the slums, and not to benefit any particular class in the community. " Use of a proposed structure, facility or service by everybody and any-

body is one of the abandoned universal tests of a public use." (*Matter of New York City Housing Authority* v. *Muller,* 270 N. Y. 333, 342, *supra*; *Matter of Murray* v. *LaGuardia,* 291 N. Y. 320, 326, 329, 331, *supra,* certiorari denied 321 U. S. 771.) That persons of low income may ultimately be benefited by being housed in a low-rent project, such as the one here involved, may be of importance from the point of view of public health, but it is only incidental to the real purpose of the legislation here involved, which is to eliminate slum areas. So, the fact that, upon completion of the project, the plaintiff corporation and its tenant-stockholders may ultimately reap a benefit or be benefited is unimportant, provided the public good is enhanced by the construction of the project (*Matter of Murray* v. *LaGuardia, supra,* pp. 329–330).

The conclusion would seem to be inescapable, therefore, that the taking of property for a housing project may be for a public use, even though in the matter of housing preference may be granted to members of a particular class, such as a trade union, a veterans' organization, a fraternal organization or other large class in the community, provided the persons benefited are persons of low income within the meaning of the law (N. Y. Const., art. XVIII, § 1), and provided also there is no discrimination because of race, creed, color or national origin (Public Housing Law, § 223). Whether the same conclusion would follow if the project were limited entirely to members of a particular class, it is unnecessary now to decide.

It is a fair inference, on the evidence presented, that the property, if taken, will be devoted to a public use. Should it be diverted from that use, the public is not without remedy.

The judgment is, therefore, granted for the relief requested in the petition. Settle judgment.